# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | **No. 11-CR-4053-DEO** |
| v. | **Memorandum and Opinion Order** |
| **ANTONIO LARA-PANTOJA,** | |
| Defendant. | |

_____

This matter is before the Court pursuant to the objections (Docket Nos. 45 and 54) to the Magistrate Court's Report and Recommendation (Docket No. 38) regarding Defendant's motions to suppress evidence and dismiss the indictment against him. (Docket Nos. 10, 12, and 30).

## I. STANDARD OF REVIEW FOR REPORT AND RECOMMENDATION

The standard of review for a magistrate judge's Report and Recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

> judge. The judge may also receive further
> evidence or recommit the matter to the
> magistrate judge with instructions.

28 U.S.C. § 636(b)(1).

A district judge is only required to make a de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Therefore, portions of the proposed findings or recommendations to which no objections are filed are reviewed only for plain error. See United States v. Maxwell, 498 F.3d 799, 801 n.2 (8th Cir. 2007) (reviewing factual findings for "plain error" where no objections to the magistrate judge's report and recommendation were filed).

## II. FACTS

The parties agree on the basic facts of the case. The Denison, Iowa, Police Department received a tip that a grey Jeep with license plate number 080XDP was being used to traffic narcotics, and they were actively targeting the vehicle. On March 26, 2011, Officer Chad Dennler of the Denison Police Department spotted the vehicle, pulled behind it, and noticed that the license plate mount partially obscured the car's registration sticker. Based on this

pretext, Officer Dennler proceeded to pull-over the vehicle along with the Defendant who was driving it.

The Defendant stated that he did not have a valid United States driver's license but did produce a Mexican identification card. Officer Dennler asked the Defendant to join him in the front seat of his patrol car and ran the Defendant's information. Communications then advised Officer Dennler that Defendant's license was suspended for non-payment of a fine, and the Defendant was not the registered owner of the vehicle. At this point, Officer Dennler placed the Defendant under arrest and moved him to the back seat of the patrol car.

After placing Defendant under arrest, Officer Dennler called for a tow truck to impound the Defendant's vehicle and called in another officer for assistance. While awaiting for back-up and the tow truck, Officer Dennler began to take inventory of the vehicle's belongings. Soon Officer Girard arrived at the scene and continued the inventory of the vehicle so Officer Dennler could take the Defendant to the station for booking. Ultimately, police confiscated two cell phones, a wallet containing $3,076.00 between the center

console and driver's seat, and 3.75 grams of suspected methamphetamine in the center console.

In pertinent part, Denison Police Department vehicle impoundment and inventory policy provides that if a person who was driving a vehicle is arrested and that person

> is not the owner [of the vehicle] and the owner is not present at the scene of the arrest, or there is no one authorized on the scene to take custody of the vehicle[,] than the arresting officer will impound the vehicle.

Docket No. 18-2.

Further on, the policy provides that once a vehicle is impounded pursuant to the arrest of the driver, it must be inventoried; the place of where the inventory is to take place is not specified. Id.

At 8:50 p.m., Officer Dennler advised the Defendant of his *Miranda* rights through a Spanish speaking interpreter. Officer Dennler then gave the Defendant a form waiving Defendant's rights. The Defendant then asked Officer Dennler if he needed to have an attorney present to sign the waiver. Officer Dennler then explained that an Attorney did not need to be present, but Defendant had the right to ask for an attorney at any time. The Defendant then said, in reference

4

to the paper, "that's all my rights, right," and Officer Dennler replied, "Yep, that's all your rights." The Defendant then signed the waiver.

At 8:54 p.m., the interrogation began. Assistant Chief Emswiler came in and out of the interrogation room and sometimes asked the Defendant questions. Officer Dennler first told the Defendant that he was there to help and, at 8:55 p.m., stated, "there are different things I can do, but you have to cooperate with me. I don't have to charge you for the drugs, but you got to do something for me . . . ." Soon thereafter, he asked the Defendant whether he was selling drugs and the Defendant answered in the affirmative.

At 8:57 p.m., Officer Dennler then said, "Like I said before . . . we can work together . . . I don't have to charge you with that – drugs. I don't, don't have to charge you . . . It's up to me, basically, but you have to do something for me. I want more drugs than that."

Then at 9:03 p.m., the Defendant asked what the police could do for him if he were to help them; Officer Dennler responded,

> I can charge you with a felony or I can't . . . because, here's the deal, if I call

> immigration and I tell them I popped you
> with the dope and that money, the worst
> thing that's going to happen to you is you
> get deported.  You're looking at federal
> prison if you don't cooperate . . . .

Exhibit B, 21:03.

Assistant Chief Emswiler then addressed the interpreter, stating, "we will not file a felony charge on him if he cooperates, and that's all we're going to promise him at this point, but he has to come with something decent."  The interrogation continued and Defendant eventually signed a form allowing police to search his apartment and made numerous incriminating statements.

## III.   PROCEDURAL HISTORY

On March 26, 2011, a criminal complaint was filed against Defendant for a serious misdemeanor, possession of methamphetamine, and a regular misdemeanor, driving with a suspended license, in Iowa State Court.  Docket No. 22-4.  On April 21, 2011, Defendant was indicted, despite Officer Dennler and Assistant Chief Emswiler's statements to the contrary, by a federal grand jury for conspiracy to distribute

methamphetamine and possession with intent to distribute methamphetamine under federal law. Docket No. 1.

On May 25, 2011, Defendant filed a motion to suppress his statements made during the interrogation based on the Officers' conduct related above, as well as a separate motion to suppress evidence obtained during the search of Defendant's vehicle. Additionally, on July 14, 2011, Defendant filed a motion to dismiss the indictment against him based on an alleged agreement that he would not face federal charges. Docket No. 30.

In a Report and Recommendation to this Court, Magistrate Zoss found: (1) the stop of Defendant's vehicle was based on a reasonable suspicion that the Defendant had violated the law, i.e. the Defendant's registration tag was not fully visible; (2) the officer's search of the Defendant's vehicle was a legal inventory search in comportment with Denison Police Department policy; (3) the Defendant's statements made after the 9:03 p.m. statements by Denison police officers were involuntary and inadmissible, but the statements made before 9:03 p.m. were admissible; and (4) there is no legal basis for dismissing the indictment. Docket No. 38.

The Defendant now objects to Magistrate Zoss' Report and Recommendation on the following bases: (1) the evidence taken from Defendant's car was illegally seized; (2) all of the Defendant's statements, including those made prior to 9:03 p.m., should be suppressed; and (3) the indictment should be dismissed on grounds of basic fairness. Docket No. 45-1.

## IV. WHETHER THE EVIDENCE TAKEN FROM DEFENDANT'S CAR WAS ILLEGALLY SEIZED

The Defendant's objections to the Report and Recommendation have not revived their argument that Officer Dennler lacked reasonable suspicion to stop the Defendant. Thus, the sole issue related to this objection is whether Officers Dennler and Girard's search of the vehicle was proper.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). An "inventory search constitutes a well-defined exception to the warrant requirement." Illinois v. Lafayette, 462 U.S. 640,

643 (1983). Though the Supreme Court has ruled that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence," there is no ruse so long as a search is in compliance with "standardized criteria." <u>Florida v. Wells</u>, 495 U.S. 1, 4 (1990)); <u>see also</u> <u>Colorado v. Bertine</u>, 479 U.S. 367, 374 (1987) ("reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment").

In this case, Officer Dennler and Girard clearly followed the Denison Police Department rules for impounding a vehicle subsequent to the arrest of the driver of the vehicle. As previously noted, if the driver of a vehicle is not the owner and no one else is there to take responsibility for the vehicle, Denison Police Department policy requires that a vehicle be impounded and inventoried. There is nothing in the policy which requires that the vehicle be inventoried at a specific location, and, even if there were and it was violated, the discovery of the evidence would still be admissible pursuant to the inevitable discovery rule. <u>See</u> <u>Nix</u> <u>v. Williams</u>, 467 U.S. 431, 432 (1984) (adopting the inevitable discovery rule, under which "the prosecution is not required

to prove the absence of bad faith, since such a requirement would result in withholding from juries relevant and undoubted truth that would have been available to police absent any unlawful police activity").

Though it is clear police targeted the vehicle Defendant was driving because they had received a report that it was involved in trafficking narcotics, once the Defendant was legally stopped and legally arrested, they couldn't very well leave the unattended vehicle on the side of the road. Inventory searches are a reasonable exception to the protections of the Fourth Amendment because they "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." 479 U.S. at 372. To require police to leave an unattended vehicle after legally arresting a driver would produce an undesirable result. **Therefore, the Magistrate's recommendation to deny the Defendant's motion in relation to the search of Defendant's vehicle is affirmed.**

**V. WHETHER ALL OF THE DEFENDANT'S STATEMENTS SHOULD BE SUPPRESSED**

It is a long standing constitutional principle "that the prosecution 'must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth." <u>Shotwell Manufacturing Company v. United States</u>, 371 U.S. 341, 347 (1963). "[C]oercion can be mental as well as physical . . . the blood of the accused is not the only hallmark of an unconstitutional inquisition." <u>Blackburn v. Alabama</u>, 361 U.S. 199, 206 (1960); <u>see also</u> <u>Bram v. United States</u>, 168 U.S. 532, 549 (1897) (providing that coercion may occur when investigators play on a suspects hope or fear). When the Government obtains incriminating evidence from a defendant through false governmental promises, the Self-Incrimination Clause of the Fifth Amendment of the United States Constitution is implicated. <u>Shotwell</u>, 371 U.S. at 347. In pertinent part, the Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." In <u>Bram v. United States</u>, the Supreme Court stated the rule in the following manner:

> a confession, in order to be admissible,
> must be free and voluntary; that is, must
> not be extracted by any sort of threats or
> violence, nor obtained by any direct or
> implied promises, however slight, nor by
> the exertion of any improper influence.

168 U.S. 532, 542-43 (1897) (quoting 3 Russ. Crimes (6th Ed.) 478); see also 371 U.S. at 347 (providing that the proper test is that announced in Bram).

This time-honored constitutional principle must be "jealously guarded." 371 U.S. at 348. The question is whether "governmental conduct" brought about "a confession 'not freely self-determined." Shotwell Manufacturing Company v. United States, 371 U.S. 341, 348 (1963) (quoting Rogers v. Richmond, 365 U.S. 534, 544 (1961)). When a policeman "has made a promise of immunity or leniency in return for a statement," those statements brought about by such a promise are "the product of inducement, and, thus not an act of free will." Id. at 454.

The Supreme Court's rule announced in Bram and reiterated in Shotwell is clear: statements "obtained by any direct or implied promises, however slight," are inadmissible. 168 U.S. at 542-43; 371 U.S. 341 at 347; see also 168 U.S. at 541 ("The rule excludes not only direct confessions, but any other declaration tending to implicate the prisoner in the crime

12

charged . . . ."). In addition, <u>Shotwell</u> makes it clear that the types of promises implicated include promises of leniency.

As previously noted, Magistrate Zoss suppressed Defendant's statements made after 9:03 p.m. but not prior statements. At the outset of the interrogation, at 8:55 p.m., Officer Dennler told Defendant, "there are different things I can do, but you have to cooperate with me. I don't have to charge you for the drugs, but you got to do something for me . . . ." In normal parlance, Officer Dennler implicitly promised the Defendant that, if he cooperated, he would be given leniency, if not outright immunity, and almost immediately after Officer Dennler's statement and prior to 9:03 p.m., the Defendant admitted that he was dealing drugs.

The Government stresses that the test for determining the voluntariness of a confession depends upon "the totality of the circumstances – including an examination of both the conduct of the officers and the characteristics of the accused" and requires that the will of the Defendant be "overborne and his capacity for self-determination critically impaired." Docket No. 18-1, 7; <u>Wilson v. Lawrence </u>County, 260 F.3d 946, 952 (8th Cir. 2011); United <u>States v. Astello</u>, 241

F.3d 965, 967 (8th Cir. 2001). This Court agrees that this is the controlling test for determining whether a defendant's statement is voluntary in a general sense, but Supreme Court precedent on point indicates that, when police officers make explicit or implied, false promises of leniency that illicit a confession, a defendant's will has been overborne; that is, when a defendant is given a choice to cooperate and go free or receive leniency or not to cooperate and face the full force of the Government, a defendant is given no choice at all. <u>See</u> 371 U.S. at 347-48 (providing that evidence procured by direct or implied promises, however slight, "can no more be regarded as the product of a free act of the accused than that obtained by official physical or psychological coercion")

The Government also cites the Eighth Circuits decision in <u>Simmons v. Bowersox</u>. 235 F.3d 1124 (8th Cir. 2001). The <u>Simmons</u>' Court noted that "[a]lthough a promise . . . is a relevant consideration . . . it is only one circumstance to be considered and does not render a confession involuntary per se." 235 F.3d at 1133 (citation omitted). This begs the question: what kind of promise was made in <u>Simmons</u>? The issue in <u>Simmons</u> was whether police statements to the suspect

that "it would be in his 'best interest' to tell the truth" rendered his subsequent statements involuntary. 235 F.3d at 1133. The Eighth Circuit determined that statements showing a preference for honesty do "not constitute an implied or express promise of leniency for the purpose of rendering [a] confession involuntary." Id. Thus, the Simmons Court was not considering a promise for leniency or immunity at all, and, even if they were considering a related species of such a promise, the promise was far more vague, and, therefore, far less coercive than the promise present in this case.

The Government also cites the Eighth Circuit's decision in United States v. Kilgore for the proposition that a "promise of leniency does not in itself make a statement involuntary." Docket No. 18-1, 6 (citing 58 F.3d 350 (8th Cir. 1995). In Kilgore, a recently detained suspect asked police if he would be allowed to go home that night, police said yes, and the defendant later admitted to his wrong doing. 58 F.3d at 352. Kilgore did not involve a promise that no charges would be brought against him as here. Additionally, police did not make false promises; they told the defendant he could take his car and go home that night in exchange for his

cooperation and kept their promise. 58 F.3d at 352. Finally, in <u>Kilgore</u>, the sequence of events made it seem as though the defendant began speaking because his car, which contained incriminating evidence, was going to be searched. <u>Id.</u> Thus, in <u>Kilgore</u>, police did not make false promises, there were intervening circumstances, and the promises made were not as enticing as in the case at bar. <u>Id.</u> None of the cases cited by the Government involve promises not to arrest the defendant as occurred here.

Finally, after review of the DVD of the interrogation, this Court has some doubt the Defendant understood the nature of his rights in the first place. Though an interpreter was present, the Defendant speaks Spanish, knows very little English, and is a citizen of Mexico and so, presumably, is unfamiliar with the constitutional protections afforded people within the United States. As previously noted, prior to signing a waiver of his rights, he asked whether he needed an attorney present to do so. This is evidence that he did not understand the nature of his right to an attorney.[1] Further,

---

[1] After the Defendant asked if he needed an attorney present to sign the waiver, Officer Dennler explained that an attorney was not necessary but Defendant was entitled to one

just before signing the waiver, the Defendant looked at the waiver and asked, "that's all my rights, right," and Officer Dennler replied, "Yep, that's all your rights." While watching the DVD, this Court had the impression the Defendant thought he was signing up for his rights, rather than waiving them. Naturally, a Defendant's knowledge of his rights, as well as the likelihood that his will can be overborne, are interrelated: the less a defendant understands his rights, the more susceptible he will be to the suggestion of abandoning them. While this Court is not saying with certainty the Defendant did not properly waive or understand his rights, the doubt surrounding his waiver, coupled with Officer Dennler's promises, have persuaded this Court that his subsequent statements were "not freely self-determined." Rogers v. Richmond, 365 U.S. 534, 544 (1961).

**Therefore, the Magistrate's recommendation denying Defendant's motion in relation to Defendant's statements made after Officer Dennler's promise at 8:54 p.m. is rejected, and**

_____

at any time. While this may have cured the Defendant's misconceptions about his right to an attorney, Officer Dennler did not elaborate on his right to remain silent or the fact that anything he said can and would be held against him in a court of law.

**the Magistrate's recommendation granting Defendant's motion in relation to Defendant's statements made after 9:03 p.m. is affirmed; all of the Defendant's statements made after 8:54 p.m. were obtained in violation of the 5th Amendment and are inadmissible.**

**VI. WHETHER THE INDICTMENT AGAINST THE DEFENDANT SHOULD BE DISMISSED**

The Defendant's brief argues that the promises made by members of the Denison Police Department not to arrest the Defendant, and, later, not to charge the Defendant with a felony, were binding on the U.S. Attorney's office, and, therefore, the indictment should be dismissed. Docket No. 46, 12-16. This Court does not agree.

The Denison Police Department is not an agent of the federal government, and, therefore, they lack the authority to bind the U.S. Attorney's Office.

Further, in <u>United States v. Cleveringa</u>, this Court ruled that even the Federal Deposit Insurance Corporation (FDIC), which, like the U.S. Attorneys Office, is part of the federal executive branch, lacked the authority to bind the U.S. Attorneys Office.   08-CR-4086-DEO, Docket No. 25.    In <u>Cleveringa</u>, this Court favorably cited a Northern District of New York decision, stating, "Federal crimes are prosecuted by the United States Attorney, who possess an absolute and unreviewable discretion as to what crimes to prosecute." <u>New York v. Muka</u>, 440 F. Supp. 33 (N.D.N.Y. 1977).   This Court also noted that, some time ago, "[t]his Court was . . . the United States Attorney for the Northern District of Iowa," and no other branch of government had the authority to "say or do anything" that would prevent a "matter from becoming criminal in nature."   08-CR-4086-DEO, Docket No. 25, 7.

This Court thinks investigators' false promises of leniency are beneath the dignity and importance of their office and, in this case, violate the Fifth Amendment to the United States Constitution; however, dismissal of an indictment is not the correct remedy.   **Therefore, the**

**Magistrate's finding denying Defendant's motion to dismiss the indictment is affirmed.**

IT IS **THEREFORE HEREBY ORDERED:**

1) The Magistrate's finding denying Defendant's motion to suppress evidence obtained during the search of the vehicle is affirmed.

2) The Magistrate's finding denying Defendant's motion to suppress Defendant's statements made after Officer Dennler's promises at 8:54 p.m. and before 9:03 p.m. is rejected; Defendant's statements made between 8:54 p.m. and before 9:03 p.m. were obtained in violation of the Defendant's Fifth Amendment rights and are inadmissible.

3) The Magistrate's finding denying Defendant's motion to dismiss the indictment is affirmed; and

4) All of the Magistrate's other findings, excepting those related to Defendant's statement made between 8:54 and 9:03 p.m., are affirmed.

IT IS **FURTHER HEREBY ORDERED** that based upon the time frame involved in relation to the jury trial scheduled for November 7, 2011, the Court finds it is in the interest of

justice to continue the trial date.  The jury trial scheduled for November 7, 2011, is hereby **continued** for one month on the rotating trial docket,[2] and will now take place on **December 5, 2011, at 9:00 a.m.**  Speedy trial time is excluded pursuant to 18 U.S.C. 3161(h)(1)(D).

    **IT IS SO ORDERED** this 31st day of October, 2011.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

---

[2]Counsel for the parties shall refer to the deadlines established for providing status updates to the Court when a case is placed on the **rotating trial docket**, as set out in the Trial Management Order (Docket No. 5).